**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DISTRICT**

| | | |
|---|---|---|
| **DAVE ADAMS**<br><br>**Plaintiff,**<br>**v.**<br><br>**ST. CHARLES COUNTY MISSOURI**<br>**SERVE: COUNTY EXECUTIVE**<br>**STEVE EHLMANN**<br>**201 N. Second Street**<br>**ST. Charles, MO 63301**<br><br>**DAVID TODD,**<br>**in his individual and official capacity**<br>**SERVE AT:**<br>**678 Lakewood Dr.**<br>**Lake St. Louis, MO 63367**<br><br>**CHRISTOPHER HUNT,**<br>**in his individual and official capacity**<br>**SERVE AT:**<br>**ST. CHARLES COUNTY POLICE DEPARTMENT**<br>**101 Sheriff Dierker Court**<br>**O'Fallon, MO 63366**<br><br>**JOANN LEYKAM,**<br>**in her individual and official capacity**<br>**SERVE AT:**<br>**201 N. Second Street**<br>**ST. Charles, MO 63301**<br><br>**Defendants.** | ) | **Case No.:**<br><br>**JURY TRIAL DEMANDED** |

**PETITION**

COMES NOW Plaintiff, Dave Adams, by and through his counsel, and for his Petition against Defendants St. Charles County Missouri, David Todd, Christopher Hunt and Joann Leykam, states as follows:

**PARTIES, JURISDICTION AND VENUE**

1. Plaintiff Dave Adams ("Adams") is an individual who resides in St. Charles County, Missouri. At all times relevant herein, he was employed by St. Charles County, Missouri through the St. Charles County Police Department.

2. At all times relevant herein, Defendant St. Charles County, Missouri ("St. Charles County") is a Missouri County pursuant to Article VI, Section 18 of the Constitution of the State of Missouri.

3. At all times relevant herein, the St. Charles County Police Department ("County Police") was a department and agency of St. Charles County, Missouri created pursuant to Title I, Article I, Section 200 of the St. Charles County Code, with its principal place of business located in St. Charles County, Missouri.

4. Defendant David Todd ("Todd") is an individual who resides in St. Charles County, Missouri. At all times relevant herein, Todd was employed as the Chief of Police for the County Police and was under the command of Joann Leykam. As Chief of County Police, Todd has policymaking authority regarding the promotion, demotion, discipline and termination of County Police officers. He is sued in both his individual and official capacity.

5. Defendant Christopher Hunt ("Hunt") is an individual who resides in St. Charles County, Missouri. At all times relevant herein, Hunt was the Captain of the Internal Affairs Division at the County Police, under the command of Todd. As Captain of the Internal Affairs Division of the County Police, Hunt has policymaking authority regarding promotion, demotion, discipline and termination of County Police officers. He is sued in both his individual and official capacity.

6. Defendant Joann Leykam ("Leykam") is an individual who resides in St. Charles County, Missouri. At all times relevant herein, Leykam was the administrator of operations for St. Charles County, including County Police. In her official capacity as the administrator of operations for St. Charles County, Leykam has the policymaking authority regarding promotion, demotion, discipline and termination of County Police officers. She is sued in both her individual and official capacity.

7. This Court has jurisdiction over this cause of action pursuant to 28 U.S.C. §1331.

8. Venue is proper in this Court pursuant to 28 U.S.C. §1391 as the county in which the causes of action arose.

9. This Court has the statutory authority to grant the relief requested herein pursuant to 42 U.S.C. §1983.

## **FACTS COMMON TO ALL COUNTS**

10. Adams has been certified as a law enforcement officer in the State of Missouri for 26 years and a police officer for St. Charles County Police for 16 years.

11. Up until 2019 Adams received awards as an exemplary police officer, and yearly raises.

12. Adams has applied for numerous promotions. He was told on numerous occasions he was next in line for the promotions. One position he applied for, field training officer, he had previously held but resigned from due to family matters.

13. Adams was qualified for each of the promotions he applied for but a person with less tenure or a person who was not a member of Local 42 was selected over him.

14. On October 30, 2019 pursuant to a contract between County Police and the City of Weldon Springs, Adams was assigned to patrol Kisker Road Park. During said assignment Adams went to Lions Park to meet a woman friend. Lions Park was about five minutes away from Kisker Road Park and outside of Weldon Springs' city limits.

15. The meeting took about thirty minutes. During this time there were no calls which required Adams to respond too.

16. Sgt. Drews of County Police followed Adams to Lions Park and reported this to Hunt.

17. Hunt ordered Lt. Koestler to find out the name of the woman and to contact her about what transpired at the meeting.

18. Adams was then contacted by Lt. Koestler and told an Internal Affairs investigation had been opened. Lt. Koestler asked for the woman's name, contact information, and Adam's relationship with the woman. Adams provided the requested information.

19. Lt. Koestler contacted the woman and asked what transpired at the meeting. The woman told Lt. Koestler they are just friends and confirmed what Adams told Lt. Koestler.

20. Adams was told the Internal Affairs investigation was completed and sent his report to Captain Hunt and Sgt. Drews. Lt. Koestler advised Adams at most he would receive a one-day suspension.

21. On November 4, 2019, Adams was told to appear at County Police station for a second meeting. Lt. Koestler and Hunt were present in the meeting. Todd was aware of and approved the meeting.

22. Hunt questioned Adams about who the woman was, how many times they had met, and his relationship with the woman. Adams told Hunt he had met with her around five times and there were friends.

23. Hunt told Adams he wanted to download Adams' phone and Adams had to take a polygraph test.

24. Adams said he would not turn over his phone and would not take a polygraph test.

25. Hunt left the room with Lt. Koestler but returned shortly and told Adams his actions were in defiance of an order.

26. Adams requested union representation and to contact the union attorney. Hunt told Adams he could not have union representation and he could not contact the union attorney.

27. Adams was told to remain in the room. Adams asked why he had to remain in the room. Hunt told Adams he was waiting for a letter of suspension being prepared by counsel for County Police.

28. Adams left the room to contact the union attorney. When Adams returned to the room, he was asked why he was throwing away his career.

29. Adams then agreed to take the polygraph test and requested the questions which would be asked during the polygraph. When told he would not be given the polygraph questions Adams said he was leaving.

30. As Adams attempted to leave the room, Lt. Koestler blocked the door and then accused Adams of assaulting him.

31. Hunt then told Adams he was on administrative leave and needed to turn over his ID and gun. Adams turned over his ID but did not have a gun. Lt. Koestler then proceeded to search Adams for a gun.

32. Hunt then ordered County Police officers to Adams home to pick up County Police equipment which included the patrol car, gun and radio.

33. Due to the harassment, Adams requested FMLA leave and treatment through the County Police EAP program. Adams also file a grievance due to the harassment from County Police.

34. The FMLA continued to January 28, 2020.

35. Adams was not allowed to return to work after the FMLA ended because his administrative leave was still pending.

36. On February 24, 2020, Adams was advised in a letter from Hunt that he had been terminated. Todd and Leykam approved the termination of Adams.

37. Adams appealed his termination and reached an agreement that allowed him to resign instead of being terminated. On July 6, 2020 Adams resigned.

**COUNT I**
**Violation of 42 U.S.C. §1983**
**(Retaliation For Exercise of First Amendment)**
**Against All Defendants**

COMES NOW Adams and for Count I of his cause of action against all Defendants states as follows:

38. Adams realleges and reincorporates paragraphs 1-37 as though fully set forth herein.

39. While employed as a police officer for the County Police, Adams was a member of the Local 42 police union, was the shop steward, regularly attended union meetings and made it known to Defendants that he was a union member and supporter. Plaintiff's right to be a union member is protected by the First Amendment of the United States Constitution and federal law.

40. All of the Defendants knew Adams was a union member of Local 42 and that he was the shop steward.

41. Defendants created an unconstitutional policy to intentionally retaliate against any County Police officer who exercised their constitutional right to be a union member by implementing promotion, demotion, disciplinary and termination policies and procedures that were not equally applied to County Police officers who were not union members. Further, pursuant to the unconstitutional policy, County Police officers who were members of Local 42 Police Union were denied job promotions.

42. Defendants intentionally decide to retaliate against Adams for the exercise of his free speech and right to peacefully assemble, First Amendment rights, and under color of law. The actions of Todd, Hunt and Leykam were pursuant to a policy of St. Charles County and/or County Police.

43. Adams was willfully and intentionally denied promotions to numerous positions all due to him being a member of the Local 42 Police Union and because he was the shop steward.

44. Adams was willfully and intentionally subjected to harassment and termination by Defendants due to his union activities, which is protected by the First Amendment, in the form of an internal affairs investigation over a matter that would at best result in a one-day suspension to a County Police officer who was not a union member.

45. Defendants willfully and intentionally retaliated against Adams in order to harass, disparage and defame Adams for the sole purpose to set an example of him due to his affiliation as a Local 42 union member and to discourage others from joining the union, in violation of his First Amendment rights and federal law.

46. The action taken by Defendants was the substantial or motivating factor with the sole purpose of setting an example of him due to his affiliation as a Local 42 union member, and to discourage others from becoming a Local 42 union member, in violation of his First Amendment rights and federal law.

47. Defendants St. Charles County, County Police, Todd, Hunt and Leykam have failed to discipline, suspended or terminate others with actual County Police violations who were not union members, in particular, the following:

a. St. Charles County was named in for sexual harassment complaint by Stephanie Fisk. Todd and Sgt. Jett were the two employees of St. Charles County that Fisk named as her sexual harassers. The County paid over $500,000.00 to Fisk to settle the complaint. Sexual harassment is not permitted pursuant to St. Charles County policy. Todd and Jett are not Local 42 union members and were not disciplined or suspended.

b. Hunt was retained by St. Charles County while he was on bond for burglary, assault and property damage charges. Hunt was convicted, however, the conviction was overturned on appeal. Hunt later pled to the misdemeanor. Hunt was a union member at one time, but not during his appeal and after he pled to the misdemeanor.

c. Hunt damaged a County Police vehicle that he was driving for employment not related to the County Police. Hunt was not authorized to drive the vehicle at the time he damaged the vehicle, in violation of County Police policy. Hunt was not disciplined or suspended.

d. Leykam, Todd and Hunt were involved with preventing Leykam's niece from being arrested and charged with two felonies. The responding officer was directed by Hunt

to bring Leykam's niece to Leykam's house and no charges were filed. No one was disciplined or suspended.

e. Sgt. Streck damaged a bathroom sink at Trailhead on mainstreet. He is not a Local 42 union member and was not disciplined or suspended.

f. Lt. McMann was stopped for suspicion of a DWI in Lincoln County. A County Police officer was dispatched to pick up Lt. McMann and take him to his residence. Lt. McMann is not a Local 42 member and was not disciplined or suspended.

g. Sgt. Davis was stopped two separate times in 2019 for suspicion of a DWI. He was subsequently promoted. After his promotion, he was stopped for suspicion of a DWI at the Lake of the Ozarks. He is not a Local 42 union member and was not suspended or disciplined.

h. Officer Hopkins disregarded orders to terminate a high-speed pursuit. The pursuit resulted in the fatality of a driver that was not involved in the pursuit. A wrongful death suit is pending. Hopkins is not Local 42 member and was not disciplined or suspended.

48. Other Local 42 union members, Chris Barnett, Omid Hamzehzadeh and Tom Tumbrink have been subjected to the same unconstitutional policy as Adams.

49. Barnett was subjected to two internal affairs investigations for alleged misconduct. He was forced to resign from County Police even after the investigations found no evidence of wrongdoing. Hunt leaked information of the Internal Affairs investigation.

50. Tumbrink was disciplined for arriving twenty minutes late to an unscheduled meeting. Another officer, not a union member, was also twenty minutes late to the same unscheduled meeting but was not disciplined.

51. Hamzehzadeh and Tumbrink were suspended for the unfounded criminal allegations. Both have suits pending regarding this unconstitutional policy.

52. Tumbrink was terminated for allegedly failing a polygraph test, however no proof has been provided that he actually failed the polygraph test.

53. As a direct and proximate result of Defendants' unlawful conduct set forth above, Adams has suffered and continues to suffer damages, including but not limited to, lost wages and other benefits of employment, to include but not limited to, education assistance and lost 401(k) benefits.

54. As a direct and proximate result of Defendants' unlawful conduct set forth above, Adams has suffered and continues to suffer emotional pain and mental suffering, mental anguish, inconvenience, humiliation, embarrassment, loss of enjoyment and quality of life, stress, anxiety, depression, and injury to his personal and professional reputation.

55. Defendants had an evil motive and/or were recklessly indifferent to the Constitutional rights of others, including Adams, and their unlawful conduct as stated herein was willful, wanton and outrageous. Therefore, they should be jointly and severally liable for punitive damages to punish them and deter them and others from such conduct in the future.

WHEREFORE, Plaintiff Dave Adams prays this Court enter judgment in favor of him and against Defendants St. Charles County Missouri, David Todd, Christopher Hunt and Joann Leykam; award him actual and consequential damages so as to fully and fairly compensate him for his injuries, in an amount in excess of $25,000.00; for punitive damages so as to punish and deter Defendants and others like them from committing such unlawful conduct in the future; for his costs, attorneys' fees, and interest as provided by law; and for such other and further relief as this Court deems just and proper.

**COUNT II**
**Wrongful Termination**
**(Retaliation For Exercise of First Amendment)**
**Against All Defendants**

COMES NOW Plaintiff Dave Adams and for Count II of his cause of action against all Defendants states as follows:

56. Adams realleges and reincorporates paragraphs 1-55 as though fully set forth herein.

57. While employed as a police officer for the County Police, Adams was a member of the Local 42 police union, was the shop steward, regularly attended union meetings and made it known that he was a union supporter. Plaintiff's right to be a union member is protected by the First Amendment of the United States Constitution.

58. All of the Defendants knew Adams was a Local 42 union member and the shop steward.

59. Defendants intentionally decide to retaliate against Adams for the exercise of his free speech and right to peacefully assemble, First Amendment rights, and under color of law. The actions of Todd, Hunt and Leykam were pursuant to a policy of St. Charles County and/or County Police.

60. Adams was willfully and intentionally subjected to harassment by Defendants due to his union activities, which is protected by the First Amendment, in the form of an internal affairs investigations and termination of his employment over a matter that County Police officers in the same position, but not union members, would at best receive a one-day suspension.

61. Defendants willfully and intentionally retaliated against Adams in order to harass, disparage and defame Adams for the sole purpose to set an example of him due to his affiliation as a Local 42 union member, in violation of his First Amendment rights.

62. The action taken by Defendants was the substantial or motivating factor with the sole purpose of setting an example of him due to his affiliation as a Local 42 union member, and to discourage others from becoming a Local 42 union member, in violation of his First Amendment rights and federal law.

63. Defendants St. Charles County, County Police, Todd, Hunt and Leykam have failed to suspended others with actual County Police violations who were not union members, in particular, the following:

a. St. Charles County was named in a sexual harassment complaint by Stephanie Fisk. Todd and Sgt. Jett were the two employees of St. Charles County that Fisk named as her sexual harassers. The County paid over $500,000.00 to Fisk to settle the complaint. Todd and Jett are not Local 42 union members and were not disciplined or suspended.

b. Hunt was retained by St. Charles County while he was on bond for burglary, assault and property damage charges. Hunt is not a Local 42 union member.

c. Hunt damaged a County Police vehicle that he was driving for employment not related to the County Police. Hunt was not authorized to drive the vehicle at the time he damaged the vehicle. Hunt was not disciplined or suspended.

d. Leykam, Todd and Hunt were involved with preventing Leykam's niece from being arrested and charged with two felonies. The responding officer was directed by Hunt

to bring Leykam's niece to Leykam's house and no charges were filed. No one was disciplined or suspended.

e. Sgt. Streck damaged a bathroom sink at Trailhead on mainstreet. He is not a Local 42 union member and was not disciplined or suspended.

f. Lt. McMann was stopped for suspicion of a DWI in Lincoln County. A County Police officer was dispatched to pick up Lt. McMann and take him to his residence. Lt. McMann is not a Local 42 member and was not disciplined or suspended.

g. Sgt. Davis was stopped two separate times in 2019 for suspicion of a DWI. He was subsequently promoted. After his promotion, he was stopped for suspicion of a DWI at the Lake of the Ozarks. He is not a Local 42 union member and was not suspended or disciplined.

h. Officer Hopkins disregarded orders to terminate a high speed pursuit. The pursuit resulted in the fatality of a driver that was not involved in the pursuit. A wrongful death suit is pending. Hopkins is not Local 42 member and was not disciplined or suspended.

64. Defendants took the same course of retaliation and harassment action against other Local 42 union members, Chris Barnett, Tom Tumbrink and Omid Hamzehzadeh.

65. Barnett was subjected to two internal affairs investigations for alleged misconduct. He was forced to resign from County Police even after the investigations found no evidence of wrongdoing. Hunt leaked information of the Internal Affairs investigation.

66. Tumbrink was disciplined for arriving twenty minutes late to an unscheduled meeting. Another officer, not a union member, was also twenty minutes late to the same unscheduled meeting but was not disciplined.

67. Hamzehzadeh and Tumbrink were suspended for the unfounded criminal allegations. Both have suits pending regarding this unconstitutional policy.

68. Tumbrink was terminated for allegedly failing a polygraph test, however no proof has been provided that he actually failed the polygraph test.

69. As a direct and proximate result of Defendants' unlawful conduct set forth above, Adams has suffered and continues to suffer damages, including but not limited to, lost wages and other benefits of employment, to include but not limited to, education assistance and lost 401(k) benefits.

70. As a direct and proximate result of Defendants' unlawful conduct set forth above, Adams has suffered and continues to suffer emotional pain and mental suffering, mental anguish, inconvenience, humiliation, embarrassment, loss of enjoyment and quality of life, stress, anxiety, depression, and injury to his personal and professional reputation.

71. Defendants had an evil motive and/or were recklessly indifferent to the Constitutional rights of others, including Adams, and their unlawful conduct as stated herein was willful, wanton and outrageous. Therefore, they should be jointly and severally liable for punitive damages to punish them and deter them and others from such conduct in the future.

WHEREFORE, Plaintiff Dave Adams prays this Court enter judgment in favor of him and against Defendants St. Charles County Missouri, David Todd, Christopher Hunt and Joann Leykam; award him actual and consequential damages so as to fully and fairly compensate him for his injuries, in an amount in excess of $25,000.00; for punitive damages so as to punish and deter Defendants and others like them from committing such unlawful conduct in the future; for his costs, attorneys' fees, and interest as provided by law; and for such other and further relief as this Court deems just and proper.

**PLAINTIFF DEMANDS A JURY TRIAL ON ALL COUNTS**

Respectfully submitted,

. SPECTOR, WOLFE, McLAUGHLIN & O'MARA, L.L.C.

/s/ Timothy P. O'Mara

DANIEL M. McLAUGHLIN #52750
TIMOTHY P. O'MARA, #41835
710 South Kirkwood Road
Kirkwood, Missouri 63122
dan@spectorwolfe.com
tim@spectorwolfe.com
(314) 909-0303 Telephone
(314) 909-0306 Facsimile
Attorneys for Plaintiff